W. Brown Morton v. Commissioner.
W. Morton v. Commissioner
Docket No. 13737.
United States Tax Court
1948 Tax Ct. Memo LEXIS 178; 7 T.C.M. (CCH) 314; T.C.M. (RIA) 48091; May 28, 1948
Carl J. Batter, Esq., for the petitioner. J. Richard Riggles, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined a deficiency in income tax of the petitioner for the year 1943 in the amount of $4,249.98. The years 1942 and 1943 are both involved because of the Current Tax Payment Act. A number of questions were involved in the determination of the deficiency, all of which have been adjusted between the parties except one. The remaining question is as to whether or not the petitioner is entitled to deduct losses in the amounts of $2,879.24 and $2,914.33 sustained in operating a farm, in computing his net income for the years 1942 and 1943 respectively. Findings *179 of Fact Petitioner, during all years material herein, was a resident of New York City and was engaged in the practice of law therein. He and his wife filed separate income tax returns for 1942 and 1943 on a cash basis with the collector of internal revenue in New York City. He devoted all of his time to his profession except for occasional vacations, usually of short duration, and weekends. In 1942 his earnings from his law partnership were $55,901.33 and in 1943, $53,964.06. In May 1929 he acquired real estate in King George County, Virginia, at Osso. This property included approximately 300 acres of land in two separate tracts of approximately equal size. One hundred acres was cleared and the balance was woodland. There was a twelve-room dwelling house, a tenant's house and a servant's house, each containing four rooms and a bath. The farm also contained barns, chicken houses, an ice house, a smoke house, a pump house and a four-car garage. Petitioner's family usually spent the summer at the farm and made short visits there at Christmas, Easter and other holidays. Petitioner joined his family whenever possible. On these visits such produce as was grown on the farm was used *180 on the family table. From 1929 to 1932 a tenant farmer operated the farm but no profits are in evidence. Thereafter a friend of the petitioner moved into the tenant house and remained on the place until early in 1942. He farmed part of the farm and kept all that he raised. He used his own stock and implements and petitioner paid nothing but the taxes. From 1932 through 1942 no farming operations occurred in which petitioner was financially interested. In 1942 petitioner entered into a sharecropping contract with a new tenant whereby petitioner furnished all seed, equipment and working stock and the tenant furnished the labor. Petitioner received no income under this tenancy. During this period petitioner employed a caretaker for wages and living quarters. He also worked on the upkeep of the farm. The expenditures during the taxable years were as follows: 1942
1943
Labor
$1,545.45
$1,696.63
Materials and supplies
752.23
553.23
Insurance
561.66
513.35
Repairs
426.12
No produce was sold in 1942 and in 1943 fruit to the value of $275 was sold. The farm has showed a loss for each year since it was acquired by the petitioner. The only time he *181 devoted to farming was in giving occasional instructions to the man on the place. He purchased the farm in 1929 with the expectation of retiring from practicing law at some time in the future. The occurrence of the depression shortly thereafter caused him to give up his plan for retirement. He sold the tract on which the farm house was not located in 1944 and has since raised some cut flowers for the New York and Washington markets. The petitioner was not engaged in the business of farming nor was he engaged in farming for a profit and the amounts which he expended were not ordinary and necessary expenses paid or incurred in the production of income, nor for the management, conservation or maintenance of property held for the production of income. Opinion The losses sustained by the petitioner in the operation of his farm are deductible by him, if at all, under the provisions of sections 23 (a) (1) (A) or 23 (a) (2). [1] Such losses must result from ordinary and necessary expense incurred either in a trade or business or for the production or collection of income or for the management, conservation or maintenance of property held for the production of income. Thus the purpose *182 of the taxpayer in making the expenditures and his financial experience in the operation of the venture become of great importance. See , where Judge Hand says in part: "The question in this case is a narrow one, and is merely whether the farm which Mr. Davies operated during his lifetime at his residence on Long Island was a 'lawful business carried on for gain or profit.' I have no doubt that a lawyer can operate a farm for profit. However unlikely it may be that he will succeed in the enterprise, the enterprise may in fact be intended as a business. But it is equally clear that a lawyer may run a farm merely as an adjunct to his country place, and between the two the test appears to me to be only of his actual intention. Moreover, in ascertaining that intention, I can see no escape from making the crux of the determination his receipts and expenditures." (Italics supplied.) *183 In the present case we may inquire as to why the taxpayer made the expenditures. He says he acquired the land with the ultimate purpose of retiring from his law practice but that the occurrence of the depression changed his mind. Did it convince him that there were no prospects of profits in farming or did he suffer such losses from his savings as to feel compelled to recoup by persisting at his profession? In either case it would seem that he had lost any real idea he might have nourished of gaining substantial profits from the farm. His actual experience in thirteen years of consistent loss would seem to justify a doubt as to possible prospective profits. In , petitioner's testator was engaged in financial operations in New York City. He owned a stud farm on Long Island where he raised pedigreed horses. The farm itself was devoted to raising forage for the horses and a considerable area produced vegetables and truck. The farm house itself was unoccupied, although the owner did spend several months at the farm at which time he lived with his personal servant. During two of the taxable years *184 produce sales and breeding fees produced $2,285.53 and $2,506.06. The farm had been operated for twelve years with a loss each year. The Board of Tax Appeals held that the taxpayer was not engaged in farming as a business. On appeal ( ), the Court said: "'Business' is defined to be that which occupies the time, attention, and labor of men for the purpose of livelihood or profit. It is not necessary that this should be the sole occupation or employment of the party. Bouv. Law Dict. 406 'Business'; , Ann. Cas. 1912B, 1312. On occupation or employment will not be excluded from the classification of business merely because it actually results in loss instead of profit; but it is essential that livelihood or profit be at least one of the purposes for which the employment is pursued, in order to bring it within the accepted definition of the word, and this applies to farming as well as other employments. ." The case at bar is somewhat less favorable to the taxpayer than the Deering case since in that case there *185 was no evidence of a country home for the use of the taxpayer's family and in that case the farm did produce some substantial revenue to reduce the loss. In the case at bar the taxpayer admits in his 1942 income tax return that there were "No farming operations since 1932. No produce sold in 1942." He did not testify, furthermore, of there being any farm profits prior to 1932. While it is true that in 1941 the taxpayer did purchase some farm equipment, stock and seed, and did employ a share-crop farmer, no profits resulted and in view of the past productive history of the farm, it seems that it would have taken an "incorrigible optimist" to anticipate any. In , the Court says concerning profits: "It does seem to me that if a man does not expect to make any gain or profit out of the management of the farm, it cannot be said to be a business for profit, and while I should be the last to say that the making of a profit was not in itself a pleasure, I hope I should also be one of those to agree there were other pleasures than making a profit. Indeed, it makes no difference whether a man is engaged in a business which gives him pleasure, if it be a *186 business; that is irrelevant, as we said in Wilson v. Eisner. But it does make a difference whether the occupation which gives him pleasure can honestly be said to be carried on for profit. Unless you can find that element it is not within the statute * * *." As to whether or not the money expended on the farm was ordinary and necessary expense incurred for the management, conservation or maintenance of property held for the production of income, we believe that a small excerpt from the testimony of the taxpayer himself, together with evidence available to the taxpayer which he did not produce, will furnish the answer. In his testimony the taxpayer said: "Q. * * * (Why) did you continue to carry the farm along as a business when you had repeated losses? "A. Well a piece of property like that, if you don't farm it, it goes to pot very quickly. You have either got to farm it or sell it * * *." The whole record in this case is highly persuasive that the taxpayer maintained this farm as a country home for himself and family and that such expenditures as he made for the operation of the farm were for the preservation of that home rather than for the making of profits. The fact *187 that he might have hoped that at some distant future time he might retire to the farm and operate it or that some incidental profits might result from the cultivation of the farm necessary to maintain its appearance does not change the basic nature of the operation into one of conserving property held for the production of income. Furthermore, the record is wholly blank as to facts which might have made prospective profits a reasonable probability. We do not know, for example, the cost base of this farm nor the price received for the portion sold in 1944. We thus know nothing of any reasonable prospect of gain from the resale of the farm. In , cited by petitioner, prospective capital gain was considered important to counteract loss in operations of a stock farm. The taxpayer testified as to growing some cut flowers for the market subsequent to the taxable year but nothing is said as to any profits arising therefrom. In fact, in the record in this case we do not find sufficient evidence to overcome the presumption of correctness of the Commissioner's finding that the expenses incurred by the taxpayer were not ordinary and necessary either *188 to the carrying on of a trade or business or for the production or collection of income or for the management, conservation or maintenance of property held for the production of income. Decision will be entered under Rule 50. *
Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * (2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩
*. Decision is as amended by Tax Court order dated June 24, 1948.↩